**136 Nev., Advance Opinion 56**
IN THE SUPREME COURT OF THE STATE OF NEVADA

| IN THE MATTER OF THE JORDAN DANA FRASIER FAMILY TRUST. | No. 77981 |
| --- | --- |

| AMY FRASIER WILSON,<br>Appellant,<br>vs.<br>STANLEY H. BROWN, JR., SPECIAL ADMINISTRATOR OF THE ESTATE OF DINNY FRASIER, DECEASED; PREMIER TRUST, INC.; JANIE L. MULRAIN; NORI FRASIER; AND BRADLEY L. FRASIER, M.D.,<br>Respondents. | FILED<br><br>AUG 27 2020<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK  |

Appeal from district court orders resolving petitions concerning the internal affairs of a nontestamentary trust and confirming amendments to the trust. Second Judicial District Court, Washoe County; David A. Hardy, Judge.

*Affirmed in part, reversed in part, and remanded with instructions.*

Doyle Law Office, PLLC, and Kerry St. Clair Doyle, Reno,
for Appellant Amy Frasier Wilson.

Michael A. Rosenauer, Ltd., and Michael A. Rosenauer, Reno,
for Respondent Janie L. Mulrain.

20-31554

Robertson, Johnson, Miller & Williamson and G. David Robertson and Alison Gansert Kertis, Reno,
for Respondent Premier Trust, Inc.

Wallace & Millsap LLC and Patrick R. Millsap and Fred M. Wallace, Reno, for Respondent Stanley H. Brown, Jr., Special Administrator of the Estate of Dinny Frasier.

Bradley L. Frasier, M.D., Oceanside, California,
in Pro Se.

Nori Frasier, Oceanside, California,
in Pro Se.

BEFORE PARRAGUIRRE, HARDESTY and CADISH, JJ.

*OPINION*

By the Court, HARDESTY, J.:

NRS 165.015 governs contests to the validity of a revocable nontestamentary trust. Following the assumption of jurisdiction over the trust under NRS 164.010, the district court must hold an evidentiary hearing and make factual findings when an interested person challenges a settlor's or trustee's fitness in accordance with NRS 164.015 and issue an order binding in rem on the trust and appealable to this court. Here, a trust beneficiary challenged the settlor's capacity to execute amendments to the trust, and the district court entered an order denying the objections and confirming the amendments. Because the district court did not hold an evidentiary hearing or provide factual findings regarding the challenge to the settlor's mental capacity prior to approving the amendments to the

SUPREME COURT
OF
NEVADA

(O) 1947A

2

trust, as required by NRS 165.015, we reverse and remand for further proceedings.

I.

Jordan and Dinny Frasier, residents of California, created the Jordan Dana Frasier Family Trust in order to protect their wealth and provide for their three children—appellant Amy Frasier Wilson, respondent Dr. Bradley Frasier (Brad), and respondent Nori Frasier. As originally constructed, Jordan and Dinny were the co-trustees of the Family Trust. When Jordan passed away in 2014, the Family Trust divided into two subtrusts—the Survivor's Trust and the Tax Exemption Trust—for which Dinny was the sole trustee and the sole income beneficiary until her death.[1] Dinny subsequently appointed respondent Premier Trust, Inc., a Nevada trust corporation, as co-trustee.

In March 2016, Dinny and Premier filed a petition in the district court to confirm them as co-trustees and to provide guidance regarding a dispute that had arisen between the Family Trust and Brad. The dispute concerned whether money that was provided to Brad from the Family Trust for the purchase of a medical building was a gift, loan, or equity investment. In June 2016, Dinny executed a Second Amendment to the Survivor's Trust, designating Amy as the sole beneficiary and disinheriting both Brad and Nori. In August, the district court assumed

---

[1]During the pendency of this appeal, Dinny passed away, and Stanley H. Brown, Jr., was substituted in as the special administrator of her estate (hereinafter, Dinny's estate). *See In re Frasier Family Trust*, Docket No. 77981 (Order Substituting Personal Representative, Sept. 4, 2019).

jurisdiction pursuant to NRS 164.010[2] and ordered the parties to attend mediation.

In November, Premier filed a supplemental petition for instructions on how to handle allegations from Dinny's children, because "each of the children has, at one time or another, questioned Dinny's competency" and claimed their siblings or other persons were exerting undue influence over Dinny. In late 2016, California attorney Barnet Resnick began representing Dinny in her personal capacity and retained respondent Janie Mulrain to act as Dinny's power of attorney and personal fiduciary. Shortly thereafter, Dinny cut off all contact with her children and grandchildren.

In January 2017, the parties attended court-ordered mediation and reached a settlement agreement whereby Brad would receive title to the medical building, and Amy and Nori would receive title to other properties and would also get equalization payments from the Survivor's Trust upon Dinny's death. The settlement agreement required a capacity determination for Dinny by a qualified gerontologist and Nevada court approval to be effective. In February, Dr. James E. Spar, a qualified gerontologist, examined Dinny and found that "she retains the testamentary capacity (as defined in Cal. Probate Code § 6100.5) required to modify her estate plan," and "she retains the capacity to enter into contracts, *as long as she is not required to rely on her unaided recall alone.*"

---

[2]In 2017, the Legislature amended NRS 164.010, effective October 2017. 2017 Nev. Stat., ch. 311, § 51, at 1695-96. Because the district court assumed jurisdiction in August 2016, we consider the statute as it applied prior to the amendment.

On April 27, 2017, Dinny executed a Third Amendment to the Survivor's Trust, which disinherited all of the children and left all of the trust's assets to charity. Dinny additionally filed a motion to approve and enforce the settlement agreement, and the district court ordered an evidentiary hearing on the matter in May 2017. At the evidentiary hearing, Amy argued Dinny lacked mental capacity and was susceptible to undue influence. Amy asserted that she had not had contact with Dinny since October 2016, and she expressed concern about some of Dr. Spar's findings. The district court disagreed with Amy's arguments and ruled that Amy should have summoned Dr. Spar and presented her own expert on Dinny's competency. The district court found that the settlement agreement was a valid and enforceable agreement. Near the end of the hearing, Amy requested that the district court appoint a guardian ad litem for Dinny, which the district court declined to do at that time. On May 19, 2017, Dr. Spar examined Dinny a second time and concluded that she was competent to make a decision to replace her co-trustee, as well as to make other trust-related decisions. In late May, Premier filed a second supplemental petition for instructions, claiming, among other things, that it was "extremely concerned" about Dinny, her finances, and her overall welfare. Amy joined in Premier's petition, agreeing with Premier's concerns over Dinny's welfare and additionally arguing that Mulrain exerted undue influence over Dinny.

In July 2017, the district court issued three orders that (1) set a hearing to determine Dinny's capacity and required Dinny to attend the hearing in person (hereinafter, July 2017 capacity order); (2) approved and enforced the settlement agreement; and (3) decided, among other issues, that Dinny had the authority to amend the Survivor's Trust if she was capacitated. In the district court's July 2017 capacity order, the district

Supreme Court
of
Nevada

(O) 1947A

5

court concluded that "based upon the current allegations, no amendment to any trust documents will be effective without proof to this [c]ourt of [Dinny]'s testamentary and contractual capacity. The evaluation provided by Dr. Spar is not preponderant proof of [Dinny]'s capacity." On September 22, 2017, Dr. Spar evaluated Dinny a third time. Dr. Spar determined that Dinny was

> functioning in the range of mild to moderate global cognitive impairment, with deficits mainly in spontaneous recall of previously learned facts and information . . . . [Additionally, Dinny] retains testamentary and contractual capacity, is quite aware of her overall circumstances, and remains capable of guiding you in the process of seeking a settlement of her current legal dilemma.

The district court set Dinny's capacity hearing for October 2017, but neither Dinny nor an examining physician attended. Dinny's counsel represented that the physician had a last-minute scheduling conflict and that Dinny was not present because her primary care physician advised her that traveling to Nevada would endanger her mental and physical health. No capacity determination was made at this hearing. Throughout the remainder of the proceedings below, Dinny never personally appeared, nor did the district court hold a hearing on her capacity. In December 2017, the district court ordered (1) Dinny's removal as co-trustee, (2) that Resnick and Mulrain provide an accounting for the district court's review, and (3) that Brad's motion seeking payment of $50,000 allotted to him in the settlement agreement be granted.

In June 2018, Dinny filed a petition for final accounting and requested the removal of Premier and appointment of a sole successor trustee. In August, Premier filed petitions requesting approval of its resignation as trustee, that the district court ratify and confirm all of

Premier's actions, and to settle Premier's account. The district court set a hearing to resolve Premier's requests and determine Mulrain's fees and permitted prehearing statements by the parties. Amy then objected to Mulrain's fee request, questioning whether Dinny had capacity in 2016 to enter into a fiduciary relationship with Mulrain. Amy additionally claimed that Mulrain was exerting undue influence over Dinny, complained about the competency of Dinny's caregivers, and requested that the court appoint an investigator to examine Dinny's environment and report to the district court whether Dinny was competent and free from undue influence. Additionally in August, Dinny was evaluated by Dr. Sandra Klein, who opined that Dinny's "safety is a primary concern now. . . . [S]he is not capable of appreciating the situation or consequences of her decisions independently. . . . [She is] vulnerable to undue influence by others when it comes to her financial affairs."

In October, the district court held a two-day evidentiary hearing to resolve the outstanding issues related to the Survivor's Trust. Relevant here, the parties discussed that the Survivor's Trust needed to be amended a fourth time to effectuate the terms of the settlement agreement, but all of the parties expressed concern about whether Dinny had the capacity to amend it. The court determined that it could not "conclude that [Dinny]'s incapacitated. There's too much evidence that she's still engaged in some ways. But I also can't conclude that she's fully capacitated . . . ." The parties agreed and arranged to have Dinny evaluated contemporaneously with her execution of the Fourth Amendment to the Survivor's Trust.

On November 12, 2018, Dr. Klein evaluated Dinny again and determined "she is not capable of appreciating the situation or consequences

of her decisions independently. She is unable to manipulate information and balance the pros and cons of her immediate situation[ ] because information becomes overwhelming for her and she needs assistance keeping facts and details correct without forgetting." However, Dr. Klein concluded that Dinny's "cognitive ability has remained stable when compared to her performance on neuropsychological evaluations [on] July 12, 2018 and August 30, 2018. She continues to have [t]estamentary [c]apacity but would need trusted advisors to help her understand information sufficiently to ensure [c]ontractual [c]apacity." On November 13, Dinny executed the Fourth Amendment to the Survivor's Trust to effectuate the terms of the settlement agreement by providing for equalization payments but otherwise left everything to charity. On November 19, Dinny petitioned to confirm the Third and Fourth Amendments to the Survivor's Trust. Amy objected shortly thereafter arguing Dinny lacked capacity and could not understand the complex amendments made to the trust. Additionally, Amy challenged an arithmetic error in calculating the offset distributive balances in the Fourth Amendment to the Survivor's Trust.

In December 2018, the district court entered its order, wherein it denied Amy's challenge to Dinny's capacity, as well as (1) confirmed the Third and Fourth Amendments to the Survivor's Trust, (2) granted Premier's petition to resign as co-trustee and substituted U.S. Bank in its place, (3) granted Mulrain's fees, and (4) explained that it had

> previously expressed its concerns and invited the parties to comment upon the propriety of an independent investigator to confirm Dinny's capacity, removing Ms. Mulrain as Dinny's attorney-in-fact, and appointing a guardian ad litem. Upon reflection, this [c]ourt must adhere to

SUPREME COURT
OF
NEVADA

(O) 1947A

8

its jurisdictional authority over the trusts and modestly intervene in personal issues in accordance with NRS 164.010 and NRS 164.015. Additionally, all persons related to these ancillary issues reside in California and the parties' convenience compels California as the appropriate forum to address these issues.

Later in December, Dinny petitioned the district court to effectuate the Fifth Amendment to the Survivor's Trust to resolve the alleged arithmetic error Amy raised. In January 2019, the district court entered a supplemental order confirming the Fifth Amendment to the Survivor's Trust.

Amy appeals the district court's December 2018 and January 2019 orders and challenges the court's confirmation of the amendments to the Survivor's Trust and payment of fees to Mulrain.

II.

Amy argues that the district court erred in confirming the Third and Fourth Amendments to the Survivor's Trust without first resolving her allegations about Dinny's lack of capacity.[3] Amy complains that the district court declined to resolve the capacity question throughout the proceedings, but she particularly focuses on the district court's failure to address the capacity issue in December 2018, after she objected to Dinny's petition to confirm the Third and Fourth Amendments to the Survivor's Trust. She

---

[3]Amy also argues that the district court improperly found that it lacked jurisdiction to determine the issue of Dinny's capacity. We disagree. Though the district court's order is confusing, the district court assumed jurisdiction over the Trust pursuant to NRS 164.010 and clearly recognized throughout the proceedings its jurisdiction over trust matters and Dinny's capacity to amend the Survivor's Trust.

claims that the district court erred by not holding an evidentiary hearing to resolve whether Dinny lacked capacity to execute those amendments in accordance with NRS 164.015.[4] We agree.

We review questions of statutory interpretation de novo. *Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014). NRS 164.015 sets forth procedures for when "an interested person contests the validity of a revocable nontestamentary trust" over which the district court has jurisdiction pursuant to NRS 164.010. A written challenge to the validity of the trust is treated as a pleading, whether it is raised by a petitioner or by an objector. NRS 164.015(3). When such a challenge is made, NRS 164.015(4) provides that

> the competency of the settlor to make the trust, the freedom of the settlor from duress, menace, fraud or undue influence at the time of execution of the will, the execution and attestation of the trust instrument, or any other question affecting the validity of the trust is *a question of fact and must be tried by the court* . . . .

(Emphasis added.) Based on the plain language of the statute, it is clear that district courts must resolve questions of fact in a trial before the court.

---

[4]On appeal, Premier does not oppose Amy's contention. Brad responds that Amy's arguments are "certainly a determination for the Supreme Court of Nevada to make," but he fails to support his arguments with relevant legal authority or citations to the record, and he made no attempt to supplement his brief after issuance of our order cautioning him that failure to do so could result in his arguments not being considered. *See In re Frasier Family Trust*, Docket No. 77981 (Order, Nov. 21, 2019); *see also Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006). Finally, Mulrain joined in the answering brief filed by Dinny's estate, and Nori failed to file an answering brief at all. Accordingly, our opinion addresses only the arguments raised by Amy and Dinny's estate.

 

At a minimum, an evidentiary hearing is required on the factual question raised in the challenge under NRS 164.015.

In the district court's December 2018 order confirming the Third and Fourth Amendments, the court detailed that some of Amy's objections were "previously considered by this [c]ourt . . . [and that] Amy's other objections, primarily to capacity, are denied." Based on our review of the proceedings below, although the district court noted concerns about Dinny's capacity at several points, it *never resolved* the factual question in accordance with NRS 164.015. Thus, despite Dinny's estate's arguments to the contrary, the district court erred when it failed to comply with NRS 164.015 following Amy's objection to the validity of the trust amendments based on Dinny's capacity. NRS 164.015's procedural requirements are clear: following Amy's objection and challenge to Dinny's capacity, the district court was required to hold an evidentiary hearing, make factual findings, and properly resolve capacity in a final appealable order before enforcing the amendments to the trust.[5] *See* NRS 164.015(3)-(4), (6).

Accordingly, we remand for further proceedings. We instruct the district court to hold an evidentiary hearing where Amy, as the plaintiff, has the burden to prove that Dinny (and going forward her estate) as the defendant, lacked capacity under California law.[6] NRS 164.015(3). The

---

[5]To the extent that Amy also argues that the district court failed to consider whether undue influence affected the validity of the amendments, she never explicitly objected to the validity of the amendments on that basis. Thus, that issue need not be considered on remand.

[6]The Survivor's Trust provides that California law governs questions regarding the validity of the trusts.

district court's inquiry must resolve whether Dinny possessed capacity to enter into the Third, Fourth, and Fifth Amendments to the Survivor's Trust.[7]

## III.

Amy also argues that the district court erred when it approved Mulrain's fees without properly resolving Amy's allegations that Dinny lacked capacity to enter into a power-of-attorney relationship with Mulrain and was unduly influenced by Mulrain. We disagree.

In the district court's December 2018 order, the court noted that Amy's objection to the payment of Mulrain's fees was based on an allegation "that Dinny lacks capacity or knowledge about Ms. Mulrain's professional services and costs." The district court determined that all other objections had been resolved by "Mulrain's submission of detailed invoices and Mr. Resnick's representation that Ms. Mulrain is not seeking double payment." The district court found that Amy failed to prove her contentions by a preponderance of the evidence and therefore approved Mulrain's fees. Furthermore, the district court refrained from overstepping "its jurisdictional authority over the trusts," noting that the personal issues regarding Dinny's power of attorney were best addressed in California, where all of the persons related to those issues resided.

Dinny and Premier's petition for the district court to assume jurisdiction in 2016 was to resolve issues related to the trust in rem. *See* NRS 164.010. This provided the district court with personal jurisdiction

---

[7]Nothing in this opinion is intended to nor modifies the district court's December 2018 order granting Premier's petition to resign as co-trustee and substituting U.S. Bank in its place or, as we explain further in this opinion, the district court's award of fees to Mulrain.

SUPREME COURT
OF
NEVADA

(O) 1947A

over Dinny to resolve questions regarding her capacity and undue influence as they relate to her administration of the trust, execution of the amendments to the Survivor's Trust, and ability to serve as trustee. *Id.*; NRS 164.015(1). However, Amy has provided no authority permitting or requiring the district court to determine the validity of a power-of-attorney relationship entered into by a California resident in California. And Amy's request for a guardian ad litem, for a conservatorship, or for the district court to order an investigation into Dinny's capacity to manage her personal affairs far exceeded the scope of the district court's jurisdiction related to the trust. *See* NRS 164.010(5); NRS 164.015(1).

Amy has not otherwise shown that Mulrain's fees were unreasonable and thus fails to demonstrate that the district court clearly erred in approving those fees. *See Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009) (stating that we review a district court's factual findings for an abuse of discretion and will not set aside those findings unless they are clearly erroneous or not supported by substantial evidence). Accordingly, we affirm the district court's order regarding the award of fees to Mulrain.

## IV.

In conclusion, when a Nevada court assumes jurisdiction of a revocable nontestamentary trust under NRS 164.010, and an interested person challenges the settlor's or trustee's fitness to amend a trust instrument in accordance with NRS 164.015, the district court must hold an evidentiary hearing, make factual findings, and issue an order that is appealable to this court prior to enforcement of the challenged trust. Because the district court failed to comply with NRS 164.015's requirements, we reverse the district court's December 2018 and January

2019 orders, except for its award of fees to Mulrain and its grant to Premier to resign as co-trustee and be replaced by U.S. Bank in its place, and we remand for further proceedings consistent with this opinion.

_____, J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A